**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PAUL GREGORY BARROWS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ORACLE CORPORATION, LAWRENCE J. ELLISON, SAFRA A. CATZ, CLAYTON MAGOUYRK, MICHAEL SICILIA, DOUGLAS KEHRING, and MARIA SMITH, <br><br> Defendants. | Case No.: 26-cv-127-JLH |

**MEMORANDUM OF LAW IN SUPPORT OF ARDALAN HARDI'S MOTION
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL
<u>OF SELECTION OF COUNSEL</u>**

Dated: April 6, 2026

**FARNAN LLP**
Brian E. Farnan (No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
Email: bfarnan@farnanlaw.com
      mfarnan@farnanlaw.com

*Liaison Counsel for Ardalan Hardi and
[Proposed] Liaison Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton
(*pro hac vice* forthcoming)
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel. (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Ardalan Hardi and
[Proposed] Lead Counsel for the Class*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 6

ARGUMENT ...................................................................................................................... 6

    I.    THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF ....................... 6

        A.   The Procedure Required by the PSLRA ....................................................... 6

            1.    Movant is Willing to Serve as Class Representative ......................... 7

            2.    Movant Has the Requisite Financial Interest in the Relief Sought by the Class 8

        B.   Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure ......................................................................................... 8

            1.    Movant's Claims are Typical of the Claims of all the Class Members ............ 10

            2.    Movant Will Adequately Represent the Class ................................. 11

    II.    MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED ........................... 12

CONCLUSION .................................................................................................................. 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Blake Partners, Inc. v. Orbcomm, Inc.*,
   2008 U.S. Dist. LEXIS 43061 (D.N.J. June 2, 2008) ........................................................... 9, 11

*Chao Sun v. Han*,
   2015 U.S. Dist. LEXIS 64060 (D.N.J. May 14, 2015) ............................................................... 9

*In re Drexel Burnham Lambert Group*,
   960 F.2d 285 (2d Cir. 1992)....................................................................................................... 11

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982)................................................................................................................... 10

*In re Milestone Sci. Sec. Litig.*,
   183 F.R.D. 404 (D.N.J. 1998)................................................................................................. 9, 10

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
   63 F. Supp. 3d 394 (D. Del. 2014) ........................................................................................ 10, 11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................................................. 10

*In re Party City Secs. Litig.*,
   189 F.R.D. 91 (D.N.J. 1999)........................................................................................................ 9

*In re Razorfish, Inc. Secs. Litig.*,
   143 F. Supp. 2d 304 (S.D.N.Y. 2001)......................................................................................... 2

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)....................................................................................................... 10

*Schulman v. Lumenis, Ltd.*,
   2003 WL 21415287 (S.D.N.Y June 18, 2003) ........................................................................... 9

*Smith v. Suprema Specialties, Inc.*,
   206 F. Supp. 2d 627 (D.N.J. 2002) .............................................................................................. 2

*Soto v. Hensler*,
   235 F. Supp. 3d 607 (D. Del. 2017)............................................................................................. 2

*Vandevelde v. China Nat. Gas, Inc.*,
   277 F.R.D. 126 (D. Del. 2011) ................................................................................................. 8, 9

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) ................................................................................................. 9

*Weiss v. York Hosp.*,
  745 F.2d 786 (3d Cir. 1984)........................................................................................ 10, 11

*Weltz v. Freeman*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ....................................................................................... 8, 9

**Statutes**

15 U.S.C. § 78u-4 .................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... 2, 9, 10

## PRELIMINARY STATEMENT

Presently pending before the Court are the above-captioned action (the "Action") brought on behalf of all purchasers of Oracle Corporation ("Oracle" or the "Company") securities between June 12, 2025 and December 16, 2025, inclusive (the "Class Period"). The Action alleges violations of the Securities Exchange Act of 1934 (the "Exchange Act") against the Company, Lawrence J. Ellison ("Ellison"), Safra A. Catz ("Catz"), Clayton Magouyrk ("Magouyrk"), Michael Sicilia ("Sicilia"), Douglas Kehring ("Kehring"), and Maria Smith ("Smith") (collectively, the "Defendants").

Ardalan Hardi ("Movant") lost approximately $506,242.20 as a result of the alleged fraud during the Class Period. Movant respectfully submits this Memorandum of Law in support of his Motion for: (1) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (2) approval of his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel and Farnan LLP ("Farnan") as Liaison Counsel; and (3) the granting of such other and further relief as the Court may deem just and proper.

Movant believes that he has the largest financial interest in the outcome of the case.[1] As such, Movant meets the requirements of the PSLRA for appointment as lead plaintiff. Moreover, Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that his

---

[1] Movant's certification identifying his transactions in shares of Oracle securities, as required by the PSLRA, as well as a chart identifying his losses are attached to the declaration of Brian E. Farnan ("Farnan Decl."), dated April 6, 2026 as Exhibits A and B, respectively.

claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the Class.[2]

The PSLRA provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made *a prima facie* showing that they are an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See In re Razorfish, Inc. Secs. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001); *see also Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 632 (D.N.J. 2002); *Soto v. Hensler*, 235 F. Supp. 3d 607, 615 (D. Del. 2017). Movant satisfies these requirements.

### STATEMENT OF FACTS[3]

Oracle is a Delaware corporation with its principal executive offices in Austin, Texas. ¶ 2. The Company is a technology company that provides, among other things, infrastructure for operating artificial intelligence ("AI") programs. *Id.* Oracle's common stock trades on the New York Stock Exchange under the ticker symbol "ORCL." *Id.*

The Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements and failed to disclose material adverse facts about the Company's business and operations. ¶ 17. Specifically, Defendants misrepresented and/or failed to disclose that: (1) the Company's AI infrastructure strategy would result in massive increases in CapEx without equivalent, near-term growth in revenue; (2) the Company's substantially increased

---

[2] The "Class" is comprised of all persons who purchased Oracle securities during the Class Period. Excluded from the Class are defendants and their families, the current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

[3] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Barrows* Complaint") filed in the action styled *Barrows v. Oracle Corporation, et. al.,* Case No. 1:26-cv-00127-JLH (the "*Barrows* Action"). Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Barrows* Complaint. The facts set forth in the *Barrows* Complaint are incorporated herein by reference.

spending created serious risks involving Oracle's debt and credit rating, free cash flow, and ability to fund its projects, among other concerns; and (3) as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis. *Id.*

Defendants misled investors by touting the Company's contracts to develop data center capabilities for AI infrastructure and falsely assuring investors that the Company's significant capital expenditures ("CapEx") would quickly result in accelerated revenue growth. ¶ 3. For example, Defendants assured investors that the Company's substantially increased spending on AI infrastructure—including for data centers used by OpenAI, the operator of ChatGPT—would rapidly convert into "accelerating revenue and profit growth" and that "we have a very good line-of-sight for our capabilities to . . . just spend on that CapEx right before it starts generating revenue." *Id.*

However, on September 24, 2025, S&P Global Ratings ("S&P") warned that OpenAI "could account for more than a third of total Oracle revenues by fiscal 2028 and even a greater share by fiscal 2030," creating risks given that "OpenAI's ability to meet contractual obligations will be contingent on AI tailwinds continuing and its models being a market leader to continue to raise external financing." ¶ 4.

In response to these disclosures, the price of Oracle common stock declined nearly 2%, or $5.37 per share, from a close of $313.83 per share on September 23, 2025, to close on September 24, 2025 at $308.46 per share. ¶ 5.

The following day, on September 25, 2025, analysts at Rothschild & Co. Redburn ("Rothschild") initiated coverage of Oracle at "Sell," stating that the market was "materially overestimat[ing]" future growth resulting from Oracle's AI deals. More specifically, Rothschild

warned that the Company's promises of massive new revenues from its increased AI infrastructure business were "***unlikely to materialize***" and set a $175 price target for Oracle—representing a 40% pullback in the Company's stock. ¶ 6.

As the market digested this news, the price of Oracle common stock declined an additional $17.13 per share, or more than 5.5%, from a close of $308.46 per share on September 24, 2025, to close on September 25, 2025 at $291.33 per share. ¶ 7.

After the market closed on December 10, 2025, the Company announced its financial results for the second quarter of fiscal year 2026, including revenue growth below analysts' consensus estimate, quarterly CapEx well above analysts' estimates, and negative free cash flow of more than $10 billion. ¶ 8. During the accompanying earnings call, Defendant Douglas Kehring (the Company's Principal Financial Officer) revealed that the Company now projected $50 billion of CapEx in fiscal year 2026—$15 billion more than the Company's previous projection in September 2025 and as much as $25 billion more than the Company's projection in June 2025. *Id.* Notably, despite projecting substantially increased spending, the Company did not increase its guidance for 2026 revenue, and increased its guidance for 2027 revenues by only $4 billion. *Id.*

As *Bloomberg* and other media outlets reported that evening, the cost of protecting the Company's debt against default for five years—a notable measure of Oracle's credit risk—reached its highest level since April 2009. ¶ 10. An AllianceBernstein analyst explained, "Oracle really matters because it is harbinger of the AI capex boom," and "[t]his repricing in debt markets is very consistent with the view that risks are building." *Id.*

On this news, the price of Oracle common stock declined nearly 11%, or $24.16 per share, from a close of $223.01 per share on December 10, 2025, to close at $198.85 per share on December 11, 2025. ¶ 11.

After the market closed on December 11, 2025, Oracle filed its quarterly financial report on Form 10-Q with the SEC, which revealed that the Company had "$248 billion of additional lease commitments, substantially all related to data centers and cloud capacity arrangements, that are generally expected to commence between the third quarter of fiscal 2026 and fiscal 2028 and for terms of fifteen to nineteen years that were not reflected on our condensed consolidated balance sheets as of November 30, 2025." ¶ 12. Analysts at CreditSights later labeled this revelation a "bombshell disclosure," noting that the Company's lease commitments had increased massively from the prior quarter, when the Company had reported just under $100 billion in lease commitments. *Id.* As *Bloomberg* reported, "Oracle's future lease exposure far exceeds similar commitments by peers," with "a mismatch between the long duration of the property leases and much shorter contracts with key customers such as OpenAI." *Id.*

In response to these revelations, the price of Oracle common stock fell approximately 4.5%, or $8.88 per share, from a close of $198.85 per share on December 11, 2025, to close at $189.97 per share on December 12, 2025. ¶ 14.

On December 17, 2025, *Financial Times* reported that Blue Owl Capital—"the primary [financial] backer for Oracle's largest data centre projects in the US"—had backed out of funding a $10 billion Oracle data center intended to serve OpenAI. ¶ 15. According to the report, Blue Owl pulled out of the deal as a result of concerns about Oracle's spending commitments and rising debt levels. *Id.*

As the market reacted to this news, the price of Oracle common stock dropped $10.19 per share, or approximately 5.4%, from a close on December 16, 2025 of $188.65 per share, to close on December 17, 2025 at $178.46 per share. ¶ 16.

## NATURE AND STAGE OF THE PROCEEDINGS

On February 3, 2026, the *Barrows* Action was filed in this Court against the Defendants. On March 27, 2026, a substantially similar action was filed against Oracle in the United States District Court for the Middle District of Tennessee, entitled *Jackson County Employees' Retirement System v. Oracle Corporation, et al.,* Case No. 3:26-cv-00365-AAT (the "*Jackson County* Action"). The Action asserts claims pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, on behalf of the Class who were damaged thereby. The Action is in the preliminary stages of litigation and require the appointment of a lead plaintiff and lead counsel.

## ARGUMENT

### I.      THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

### A.      The Procedure Required by the PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. § 78u-(a)(3)(A)(i)(II) and (a)(3)(B)(i).

6

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa) has either filed the complaint or made a motion in response to a notice. . .

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

The presumption "may be rebutted only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff—

(aa) will not fairly and adequately protect the interest of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that the defendants could raise against him. Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Action.

### 1. Movant is Willing to Serve as Class Representative

On February 4, 2026, plaintiff's counsel in the *Barrows* Action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class action had been filed against Oracle and which advised putative Class members that they had 60 days to file a motion to seek appointment as a lead plaintiff in the

7

Action.[4] Movant has reviewed a complaint filed in the pending *Barrows* Action and has timely

filed his motion pursuant to the Notice.

        **2.**     **Movant Has the Requisite Financial Interest in the Relief Sought by the Class**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the

movant or movants with the largest financial loss in the relief sought by the Action. As

demonstrated herein, Movant has the largest known financial interest in the relief sought by the

Class. *See* Farnan Decl., Exhibits A and B. The movant with the largest financial interest who also

makes *a prima facie* showing of the typicality and adequacy requirements under Rule 23 is

presumptively the lead plaintiff. *See Weltz v. Freeman*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001);

*Vandevelde v. China Nat. Gas, Inc.*, 277 F.R.D. 126, 132 (D. Del. 2011).

During the Class Period, Movant purchased Oracle securities in reliance upon the

materially false and misleading statements issued by the defendants, and was injured thereby.

Movant suffered a substantial loss of approximately $506,242.20 as a result. *See* Farnan Decl.,

Exhibit B. Movant thus has a significant financial interest in the outcome of this case. To the best

of his knowledge, there are no other applicants who have sought, or are seeking, appointment as

lead plaintiff that have a larger financial interest and also satisfy Rule 23.

    **B.**     **Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure**

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial

interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the

---

[4] The *Barrows* Action was filed in this Court on February 3, 2026. On the following day, the Notice was published over *Business Wire*, a widely circulated national business-oriented wire service. *See* Farnan Decl., Exhibit C.

requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

FED. R. CIV. P. 23.

With respect to the qualifications of a class representative, Rule 23(a) requires generally that representatives' claims be typical of those of the class, and that representatives will fairly and adequately protect the interests of the class. *See Vandevelde*, 277 F.R.D. at 132; *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schulman v. Lumenis, Ltd.*, 2003 WL 21415287, at *5-6 (S.D.N.Y June 18, 2003); *Weltz*, 199 F.R.D. at 133 (considering only typicality and adequacy on a motion as lead plaintiff); *see also In re Party City Secs. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999). *See generally* Fed. R. Civ. P. 23(a)(3)-(4). Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage. *Weinberg*, 216 F.R.D. at 252.

Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See id.*; *Chao Sun v. Han*, 2015 U.S. Dist. LEXIS 64060, at *6 (D.N.J. May 14, 2015) (limiting analysis to typicality and adequacy and "defer[ring] examination of the remaining requirements until…class certification"); *Blake Partners, Inc. v. Orbcomm, Inc.*, 2008 U.S. Dist. LEXIS 43061, at *19 (D.N.J. June 2, 2008); *Weltz*, 199 F.R.D. at 133; *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

9

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying his appointment as lead plaintiff.

### 1. Movant's Claims are Typical of the Claims of all the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." Movant plainly meets the typicality requirement of Rule 23 because: (1) he suffered the same injuries as the absent class members; (2) he suffered as a result of the same course of conduct by the defendants; and (3) his claims are based on the same legal issues. *See Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 401 (D. Del. 2014) (typicality satisfied as long as claims are not "markedly different" from circumstances of and theories relied on by the class); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which the other class members' claims and injuries arise"); *see also In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414-415 (D.N.J. 1998). Rule 23 does not require that the named plaintiff be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See Weiss v. York Hosp.*, 745 F.2d 786, 808-09 (3d Cir. 1984).[5]

In this case, the typicality requirement is met because the Movant's claims are identical to and neither compete nor conflict with the claims of the other Class members. Movant, like the other members of the Class, acquired Oracle securities during the Class Period at prices artificially inflated by the defendants' materially false and misleading statements, and was damaged thereby. Thus, his claims are typical, if not identical, to those of the other members of the Class because he

---

[5] Although not relevant for the purposes of this Motion, a finding of typicality frequently supports a finding of commonality. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

suffered losses similar to those of other Class members and his losses result from the defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Weiss*, 745 F.2d at 809; *see also OFI Risk Arbitrages*, 63 F. Supp. 3d at 401; *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### 2. Movant Will Adequately Represent the Class

Moreover, Movant is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B); *see Drexel Burnham*, 960 F.2d at 291; *Blake Partners, Inc.*, 2008 U.S. Dist. LEXIS 43061 at *21; *OFI Risk Arbitrages*, 63 F. Supp. 3d at 401 (adequacy satisfied where movants have incentive to vigorously prosecute claims and have no conflicts with proposed class).

Movant's interests are clearly aligned with those of the other members of the Class. Not only is there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a significant and compelling interest in prosecuting the Action based on the large financial losses he has suffered as a result of the wrongful conduct alleged in the Action. This motivation, combined with the Movant's identical interest with the members of the Class, demonstrates that Movant will vigorously pursue the interests of the Class. In addition, Movant has retained counsel highly experienced in prosecuting securities class actions, and will submit his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). Therefore, Movant will prosecute the Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from the defendants' alleged wrongdoing, he is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Action.

Moreover, Movant considers himself to be a sophisticated investor, having been investing in the stock market for 30 years. He resides in Denver, Colorado. Movant is currently self-employed and runs a company called Back Country Properties LLC., as well as restaurant called Ranch @ west 40. Further, Movant has experience overseeing attorneys, as he has hired attorneys for real estate and business matters. Therefore, Movant will prosecute the Action vigorously on behalf of the Class. *See* Farnan Decl., Ex. D, Movant's Declaration in support of his motion.

## II.    MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky as proposed Lead Counsel for the Class and Farnan as the proposed Liaison Counsel. The members of Levi & Korsinsky and Farnan have extensive experience in successfully prosecuting complex securities class actions such as this one, and are well-qualified to represent the Class. *See* Farnan Decl. Exhibits E, F (the firm résumés of Levi & Korsinsky and Farnan).

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) appoint Movant as Lead Plaintiff for the Class; (2) approve Levi & Korsinsky as Lead Counsel and Farnan as Liaison Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: April 6, 2026                           Respectfully Submitted,


**FARNAN LLP**

By: */s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
Email: bfarnan@farnanlaw.com
       mfarnan@farnanlaw.com

*Liaison Counsel for Ardalan Hardi and
[Proposed] Lead Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton
(*pro hac vice* forthcoming)
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Ardalan Hardi and
[Proposed] Lead Counsel for the Class*

13