# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| PAUL GREGORY BARROWS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ORACLE CORPORATION, LAWRENCE J. ELLISON, SAFRA A. CATZ, CLAYTON MAGOUYRK, MICHAEL SICILIA, DOUGLAS KEHRING, and MARIA SMITH,<br><br>Defendants. | Case No. 1:26-cv-00127-JLH<br><br>**CLASS ACTION** |

## OPENING BRIEF IN SUPPORT OF THE MOTION OF SPARINVEST S.A. AND SEB FUNDS AB FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL

**Dated: April 6, 2026**

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Gregory V. Varallo (DE Bar ID #2242)
Anthony M. Calvano (DE Bar ID #6265)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com
anthony.calvano@blbglaw.com

*Liaison Counsel for Proposed Lead Plaintiff Sparinvest S.A. and SEB Funds AB*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Naumon A. Amjed (DE Bar ID #4481)
Darren J. Check
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for Proposed Lead Plaintiff Sparinvest S.A. and SEB Funds AB and Proposed Lead Counsel for the Class*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ...........................................................4

SUMMARY OF THE ARGUMENT ..........................................................................4

STATEMENT OF FACTS ..........................................................................................5

ARGUMENT ...............................................................................................................8

I.      SPARINVEST AND SEB SATISFY THE PSLRA'S REQUIREMENTS
AND SHOULD BE APPOINTED AS LEAD PLAINTIFF..............................................8

        A.    Sparinvest and SEB Have Timely Moved for Appointment
as Lead Plaintiff ...............................................................................9

        B.    Sparinvest and SEB Assert the Largest Financial Interest in the Relief
Sought by the Class.........................................................................10

        C.    Sparinvest and SEB Satisfy the Requirements of Rule 23 ...................................10

            1.    Sparinvest and SEB's Claims Are Typical of Those of the Class .............11

            2.    Sparinvest and SEB Will Fairly and Adequately Protect the
Interests of the Class .................................................................11

II.     THE COURT SHOULD APPROVE SPARINVEST AND SEB'S
SELECTION OF COUNSEL ........................................................................14

CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bhojwani v. Pistiolis*,
 Nos. 06 Civ. 13761(CM)(KNF), *et al.*,
 2007 WL 2197836 (S.D.N.Y. June 26, 2007) ..........................................................................1

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001)...................................................................................2, 10, 11, 14

*Glauser v. EVCI Career Colls. Holding Corp.*,
 236 F.R.D. 184 (S.D.N.Y. 2006) ........................................................................................13

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
 63 F. Supp. 3d 394 (D. Del. 2014)...............................................................................10, 11, 12

**Statutes**

15 U.S.C. § 78u-4(a) ...................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a)(4)....................................................................................................11

H.R. Conf. Rep. No. 104-369 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730 .....................3, 12, 13

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679.................................................13

Sparinvest S.A. ("Sparinvest") and SEB Funds AB ("SEB") respectfully submit this Opening Brief in support of their motion for: (1) appointment as Lead Plaintiff in the above-captioned action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) approval of their selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the class; and (3) such other and further relief as the Court may deem just and proper.

## INTRODUCTION

The above-captioned securities class action (the "Action") alleges violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and United States Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Oracle Corporation ("Oracle" or the "Company") and certain of the Company's executive officers and directors (collectively, "Defendants"). The Action is brought on behalf of persons or entities who purchased or otherwise acquired Oracle securities between June 12, 2025, and December 16, 2025, inclusive (the "Class Period").[1]

The PSLRA allows any member or group of members of the purported class to move for appointment as lead plaintiff and sets forth the process for determining which movant is the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(A)-(B). Pursuant to the PSLRA, a court must appoint

---

[1]     In addition to this Action, a second securities class action alleging substantially similar claims was filed in the United States District Court for the Middle District of Tennessee. *See Jackson Cnty. Emps. Ret. Sys. v. Oracle Corp., et al.*, No. 26-cv-00365 (M.D. Tenn. filed Mar. 27, 2026) (the "Second Action"); *see also, e.g., Bhojwani v. Pistiolis*, Nos. 06 Civ. 13761(CM)(KNF), *et al.*, 2007 WL 2197836, at *3 (S.D.N.Y. June 26, 2007), *R. & R. partially adopted*, No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588 (S.D.N.Y. July 30, 2007) (using broadest class period to assess movants' financial interests). Sparinvest and SEB are simultaneously filing a motion for appointment as lead plaintiff in the Second Action.

the "most adequate plaintiff" as lead plaintiff, which is the movant or movant group that: (1) makes a timely motion under the PSLRA's sixty-day deadline; (2) asserts the largest financial interest among the movants seeking appointment as lead plaintiff; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) (describing the PSLRA's process for selecting a lead plaintiff).

Here, Sparinvest and SEB respectfully submit that they are presumptively the "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff. Sparinvest and SEB's motion is timely and their losses of approximately $33,917,424.11 under a last-in, first-out ("LIFO") analysis in connection with their purchases of Oracle securities during the Class Period represent the largest known financial interest in the relief sought by the class. *See* Declaration of Anthony M. Calvano in Support of the Motion of Sparinvest S.A. and SEB Funds AB for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Calvano Decl."), Exs. A & B. Additionally, Sparinvest and SEB easily satisfy the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). Sparinvest and SEB's claims are typical of all members of the class since they purchased Oracle securities during the Class Period at inflated prices caused by Defendants' material misrepresentations and omissions and, like other class members, suffered losses when the truth about Oracle was disclosed. Sparinvest and SEB also will fairly and adequately represent the class in the litigation.

Moreover, as a small and cohesive group of sophisticated institutional investors that collectively manage more than $160 billion in assets and have experience serving as lead plaintiffs in securities class actions, Sparinvest and SEB are the prototypical investors Congress encouraged to serve as lead plaintiff under the PSLRA, and their appointment would therefore fulfill this

2

critical legislative purpose. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730, 733 ("[I]ncreasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Further, as set forth in the Joint Declaration of Peter Schnack and Erik Sundgren in Support of the Motion of Sparinvest S.A. and SEB Funds AB for Appointment as Lead Plaintiff and Approval of Selection of Counsel (the "Joint Declaration"), Sparinvest and SEB fully understand the Lead Plaintiff's obligations to the class under the PSLRA and are willing and able to undertake those responsibilities to guarantee the vigorous prosecution of this litigation. *See* Calvano Decl., Ex. C (Joint Declaration). The Joint Declaration supports this understanding by evidencing: (1) Sparinvest and SEB's determination that their joint appointment would benefit the class and their ability to work together as a cohesive group to vigorously and effectively prosecute the litigation against Defendants; (2) the basis for Sparinvest and SEB's selection of Kessler Topaz as proposed Lead Counsel, including the firm's extensive history of successfully prosecuting securities class actions; and (3) the specific steps Sparinvest and SEB have taken (and will continue to take) to ensure the effective and efficient prosecution of the litigation. *See id.* ¶¶ 7-15. Moreover, before seeking appointment as Lead Plaintiff, representatives of Sparinvest and SEB convened a conference call and discussed how they will coordinate their joint prosecution of this litigation, and otherwise ensure the vigorous, cost-effective prosecution of the litigation in the best interests of the class. *See id.* ¶¶ 10-11. Accordingly, Sparinvest and SEB have provided ample evidence of their ability to work together effectively, as well as their commitment and ability to fulfill their obligations to the class under the PSLRA.

Finally, Sparinvest and SEB have further demonstrated their adequacy to serve as Lead Plaintiff by retaining experienced and competent counsel to represent the class. As the "most adequate plaintiff" under the PSLRA, Sparinvest and SEB's selection of Kessler Topaz as Lead Counsel for the class should be approved. 15 U.S.C. § 78u-4(a)(3)(B)(v). Kessler Topaz, which investigated and filed the initial complaint (this Action), is a nationally recognized securities class action litigation firm that has an extensive history of prosecuting complex actions under the PSLRA and has recovered billions of dollars in damages for injured shareholders while serving as lead counsel.

Thus, the class can be assured of zealous representation if Sparinvest and SEB's selection of Kessler Topaz as Lead Counsel for the class is approved. Accordingly, Sparinvest and SEB respectfully request that their selection of counsel be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").

## NATURE AND STAGE OF PROCEEDINGS

The Action asserts claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act on behalf of a class of all persons and entities who purchased or otherwise acquired Oracle securities between June 12, 2025, and December 16, 2025, inclusive. The Action is in the preliminary stages of litigation and, pursuant to the PSLRA, requires appointment of a Lead Plaintiff and Lead Counsel.

## SUMMARY OF THE ARGUMENT

1.     The PSLRA requires district courts to appoint the "most adequate plaintiff" as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B). Sparinvest and SEB respectfully submit that they are the "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff because:

(1) Sparinvest and SEB timely filed a motion; (2) to the best of Sparinvest and SEB's knowledge, they have the largest financial interest in the relief sought by the class; and (3) Sparinvest and SEB will fairly and adequately represent the interests of the class. *See id.* § 78u-4(a)(3)(B)(iii)(I).

2.      The PSLRA also provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v). Accordingly, Sparinvest and SEB respectfully request that the Court approve their selection of Kessler Topaz as Lead Counsel for the class.

## STATEMENT OF FACTS

Oracle, a Delaware corporation with its principal executive offices in Austin, Texas, is a technology company that provides, among other things, infrastructure for operating artificial intelligence ("AI") programs.  Oracle's common stock trades on the New York Stock Exchange under the ticker symbol "ORCL."  *See* D.I. 1, ¶ 2.

The Action alleges that, during the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose that: (1) the Company's AI infrastructure strategy would result in massive increases in capital expenditures ("CapEx") without equivalent, near-term growth in revenue; (2) the Company's substantially increased spending created serious risks involving Oracle's debt and credit rating, free cash flow, and ability to fund its projects, among other concerns; and (3) as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis. *See id.* ¶ 17.

Investors began to learn the truth about Oracle's increased spending on AI infrastructure and much-touted contracts with OpenAI and other AI-related companies on September 24, 2025,

when S&P Global Ratings ("S&P") warned that OpenAI "could account for more than a third of total Oracle revenues by fiscal 2028 and even a greater share by fiscal 2030," creating risks given that "OpenAI's ability to meet contractual obligations will be contingent on AI tailwinds continuing and its models being a market leader to continue to raise external financing." *Id.* ¶ 4. On this news, the price of Oracle common stock declined $5.37 per share, or nearly 2%, from a close of $313.83 per share on September 23, 2025, to close at $308.46 per share on September 24, 2025.

The following day, on September 25, 2025, analysts at Rothschild & Co. Redburn ("Rothschild") initiated coverage of Oracle at "Sell," stating that the market was "materially overestimat[ing]" future growth resulting from Oracle's AI deals. More specifically, Rothschild warned that the Company's promises of massive new revenues from its increased AI infrastructure business were "unlikely to materialize" and set a $175 price target for Oracle—representing a 40% pullback in the Company's stock. *Id.* ¶ 6. In response to this news, the price of Oracle common stock declined an additional $17.13 per share, or more than 5.5%, from a close of $308.46 per share on September 24, 2025, to close at $291.33 per share on September 25, 2025.

Then, after the market closed on December 10, 2025, Oracle announced its financial results for the second quarter of fiscal year 2026, including revenue growth below analysts' consensus estimate, quarterly CapEx well above analysts' estimates, and negative free cash flow of more than $10 billion. During the accompanying earnings call, Defendant Douglas Kehring (the Company's Principal Financial Officer) revealed that Oracle now projected $50 billion of CapEx in fiscal year 2026—$15 billion more than the Company's previous projection in September 2025 and as much as $25 billion more than the Company's projection in June 2025. Notably, despite projecting substantially increased spending, the Company did not increase its guidance for 2026 revenue, and

increased its guidance for 2027 revenues by only $4 billion. *See id.* ¶ 8. Additionally, in response to an analyst's question about how much money Oracle needs "to raise to fund its AI growth plans ahead," Defendant Clayton Magouyrk (the Company's new Co-Chief Executive Officer) further stoked concerns by failing to provide a specific number and revealing only that the Company expected to spend "less" than $100 billion—suggesting that Oracle may require a massive amount of capital funding through equity raises or additional debt. *Id.* ¶ 9. As *Bloomberg* and other media outlets reported that evening, the cost of protecting the Company's debt against default for five years—a notable measure of Oracle's credit risk—reached its highest level since April 2009. An AllianceBernstein analyst explained, "Oracle really matters because it is the harbinger of the AI capex boom," and "[t]his repricing in debt markets is very consistent with the view that risks are building." *Id.* ¶ 10. On this news, the price of Oracle common stock declined $24.16 per share, or nearly 11%, from a close of $223.01 per share on December 10, 2025, to close at $198.85 per share on December 11, 2025.

After the market closed on December 11, 2025, Oracle filed its quarterly financial report on Form 10-Q with the SEC, which revealed that the Company had "$248 billion of additional lease commitments, substantially all related to data centers and cloud capacity arrangements, that are generally expected to commence between the third quarter of fiscal 2026 and fiscal 2028 and for terms of fifteen to nineteen years that were not reflected on our condensed consolidated balance sheets as of November 30, 2025." Analysts at CreditSights later labeled this revelation a "bombshell disclosure," noting that the Company's lease commitments had increased massively from the prior quarter, when the Company had reported just under $100 billion in lease commitments. As *Bloomberg* reported, "Oracle's future lease exposure far exceeds similar commitments by peers," with "a mismatch between the long duration of the property leases and

7

much shorter contracts with key customers such as OpenAI." *Id.* ¶ 12.  Additionally, on December 12, 2025, *Bloomberg* further reported that Oracle had "pushed back the completion dates for some of the data centers it's developing for the artificial intelligence model developer OpenAI to 2028 from 2027" due to "labor and material shortages"—suggesting that Oracle's promised revenue growth resulting from its increased spending may be further delayed, if it arrives at all.  *Id.* ¶ 13. In response to these revelations, the price of Oracle common stock declined $8.88 per share, or approximately 4.5%, from a close of $198.85 per share on December 11, 2025, to close at $189.97 per share on December 12, 2025.

On December 17, 2025, *Financial Times* reported that Blue Owl Capital—"the primary [financial] backer for Oracle's largest data centre projects in the US"—had backed out of funding a $10 billion Oracle data center intended to serve OpenAI. According to the report, Blue Owl pulled out of the deal as a result of concerns about Oracle's spending commitments and rising debt levels.  *Id.* ¶ 15. On this news, the price of Oracle common stock declined $10.19 per share, or approximately 5.4%, from a close of $188.65 per share on December 16, 2025, to close at $178.46 per share on December 17, 2025.

**ARGUMENT**

**I.    SPARINVEST AND SEB SATISFY THE PSLRA'S REQUIREMENTS AND SHOULD BE APPOINTED AS LEAD PLAINTIFF**

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(1)–(3)(B)(i).  First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. *See id*. § 78u-4(a)(3)(A)(i).  Within

sixty days of the publication of the notice, any member or group of members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See id*. § 78u-4(a)(3)(A)–(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member or group of class members and shall appoint as lead plaintiff the class member or group of class members that the court determines to be most capable of adequately representing the interests of class members. *See id*. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the "most adequate plaintiff" in any private action arising under the PSLRA is the movant or movant group that "has either filed the complaint or made a motion in response to a notice," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23." *Id*. § 78u-4(a)(3)(B)(iii)(I).

The "most adequate plaintiff" presumption may be rebutted only upon "proof" that the movant or movant group "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. § 78u-4(a)(3)(B)(iii)(II).

Here, Sparinvest and SEB are the "most adequate plaintiff" because they: (1) timely moved for appointment as Lead Plaintiff; (2) possess the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisfy[y] the requirements of Rule 23" for purposes of this motion. *Id*. § 78u-4(a)(3)(B)(iii)(I).

### A.    Sparinvest and SEB Have Timely Moved for Appointment as Lead Plaintiff

The PSLRA allows any member of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed. *See id*. § 78u-4(a)(3)(A)(i)(II). Here, in connection with the filing of the Action, Kessler Topaz published notice

in *Business Wire* on February 4, 2026, alerting investors to the pendency of the Action and informing them of the April 6, 2026 deadline to seek appointment as Lead Plaintiff. *See* Calvano Decl., Ex. D. Accordingly, Sparinvest and SEB have timely moved this Court for appointment as Lead Plaintiff on behalf of all members of the class.

## B. Sparinvest and SEB Assert the Largest Financial Interest in the Relief Sought by the Class

The PSLRA adopts a rebuttable presumption that the "most adequate plaintiff" is the movant or movant group with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, Sparinvest and SEB suffered losses of approximately $33,917,424.11 under a LIFO analysis in connection with their purchases of Oracle securities during the Class Period. *See* Calvano Decl., Exs. A & B. To the best of their knowledge, Sparinvest and SEB have the largest financial interest in this matter and are the presumptive "most adequate plaintiff." *See Cendant*, 264 F.3d at 243 ("The Reform Act establishes a presumption that the class member most capable of adequately representing the interests of class members is the shareholder with the largest financial stake in the recovery sought by the class.") (citation and internal quotation marks omitted).

## C. Sparinvest and SEB Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to trigger the presumption of adequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). At the lead plaintiff stage, a movant or movant group needs to make only a "*prima facie* showing of typicality and adequacy." *Cendant*, 264 F.3d at 263; *see also OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 401 (D. Del. 2014).

### 1.    Sparinvest and SEB's Claims Are Typical of Those of the Class

The typicality requirement "consider[s] whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based." *Cendant*, 264 F.3d at 265 (second and last alterations in original) (citations and internal quotation marks omitted).  Here, Sparinvest and SEB satisfy the typicality requirement because, just like all other proposed class members, they seek to recover for losses on their investments in Oracle securities incurred as a result of Defendants' misrepresentations and omissions that resulted in subsequent declines in the price of Oracle securities.  Thus, Sparinvest and SEB's claims arise from the same conduct as those of the other class members, and Sparinvest and SEB satisfy Rule 23's typicality requirement.  *See OFI*, 63 F. Supp. 3d at 401 (finding that a lead plaintiff movant group had satisfied the typicality requirement where the group's circumstances and legal theories were "not 'markedly different' from the circumstances and theories of the proposed class").

### 2.    Sparinvest and SEB Will Fairly and Adequately Protect the Interests of the Class

The adequacy element of Rule 23 is satisfied where the lead plaintiff can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In evaluating whether a movant or movant group satisfies the adequacy requirement, courts consider whether the movant or movant group "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *Cendant*, 264 F.3d at 265 (alterations in original) (citations omitted).

Here, Sparinvest and SEB are adequate because their interest in vigorously pursuing claims against Defendants—given Sparinvest and SEB's substantial losses—is aligned with the interests

of the members of the class who were similarly harmed as a result of Defendants' false and/or misleading statements. There is no potential conflict between Sparinvest and SEB's interests and those of the other members of the class, and Sparinvest and SEB are fully committed to vigorously pursuing the claims on behalf of the class. *See OFI*, 63 F. Supp. 3d at 401-02 (finding that a lead plaintiff movant group had satisfied the adequacy requirement where the group had "substantial financial interests in the resolution of this litigation" and had "expressed their interest in protecting the integrity of the marketplace and their concern about the alleged misrepresentations' effect on the market," there was "no evidence that the interest of [the group] will conflict with the interests of the proposed class," the group had "the resources to adequately manage and direct this litigation, including dedicated staffs of in-house attorneys to manage outside counsel," and the group had selected experienced proposed lead counsel and negotiated a reasonable fee agreement with them).

Sparinvest and SEB have further demonstrated their adequacy through their selection of Kessler Topaz—which investigated and filed the Action—to serve as Lead Counsel for the class. As discussed more fully below, Kessler Topaz is highly qualified and experienced in securities class action litigation and has repeatedly demonstrated its ability to prosecute complex securities class action litigation in an efficient, effective, and professional manner.

In addition to satisfying the typicality and adequacy requirements of Rule 23, Sparinvest and SEB—as sophisticated institutional investors that collectively manage more than $160 billion in total assets—are also the quintessential Lead Plaintiff that Congress sought, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in

securities class actions."); S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs[.]"); *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one." (citations omitted)).

Indeed, based on their prior experience serving as lead plaintiffs, Sparinvest and SEB are well aware of the duties the Lead Plaintiff has to oversee and supervise the litigation separate and apart from counsel, and Sparinvest and SEB have submitted sworn Certifications and a Joint Declaration attesting to their willingness and ability to fulfill those duties here. *See* Calvano Decl., Exs. A & C.

Specifically, as set forth in their Joint Declaration, Sparinvest and SEB are sophisticated institutional investors with experience leading classes of investors in securities litigation. *See* Calvano Decl., Ex. C, ¶¶ 2-5. They have demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of this litigation. *See id.* ¶¶ 6-15. Indeed, Sparinvest and SEB's decision to join together to prosecute this litigation is informed by SEB's experience successfully prosecuting shareholder class actions alongside other institutional investors. For example, in *SEB Investment Management AB v. Wells Fargo & Company*, No. 22-cv-03811 (N.D. Cal.), SEB, as lead plaintiff along with another institutional investor as an additional plaintiff and with Kessler Topaz as lead counsel, has received preliminary approval of an $85 million settlement for class members. SEB has similarly received preliminary approval of a $78 million settlements for investors as co-lead plaintiff alongside another institutional investor (with Kessler Topaz as lead counsel) in *City of Warwick Retirement System v. Catalent, Inc.*, No. 23-cv-1108 (D.N.J.).

13

Moreover, Sparinvest and SEB have already taken measures to ensure the claims are vigorously and effectively prosecuted in the best interests of the class. For example, as part of their effort to formalize their oversight of this litigation and before seeking appointment as Lead Plaintiff, representatives of Sparinvest and SEB held a conference call during which they discussed the claims against Defendants, the procedures and protocols they would follow in prosecuting the litigation, the benefits that the class will receive from the leadership of institutional investors with prior experience serving as Lead Plaintiff under the PSLRA, and the measures they have taken and will take to ensure that the class's claims will be zealously and efficiently litigated. *See* Calvano Decl., Ex. C, ¶ 10. To that end, Sparinvest and SEB discussed with each other the importance of joint decision-making, open communication, and the ability to confer, with or without counsel, on short notice in order to make timely decisions. *See id*. ¶ 11. Through these measures and others, Sparinvest and SEB have sought to ensure the class will receive the best possible representation.

In sum, Sparinvest and SEB have demonstrated their willingness, resources, and experience and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the class.

## II.    THE COURT SHOULD APPROVE SPARINVEST AND SEB'S SELECTION OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cendant*, 264 F.3d at 276 ("[T]he [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention."). Here, Sparinvest and SEB have selected and retained Kessler Topaz to serve as Lead Counsel for the class. Sparinvest and SEB's selection of counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cendant*, 264 F.3d at 276.

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field.  *See* Calvano Decl., Ex. E (Firm Profile of Kessler Topaz).  The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has obtained record recoveries in those cases, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery); and *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.) ($362.5 million recovery).  Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several high-profile securities class actions across the country, and in this District, including: *In re Humana Inc. Securities Litigation*, No. 1:24-cv-00655-JLH (D. Del.) (Hall, J.) (with SEB as lead plaintiff); *City of Coral Springs Police Officers Pension Plan v. Apple Inc.*, No. 25-cv-06252 (NW) (N.D. Cal.); *In re NVIDIA Corp. Sec. Litig.*, No. 18-cv-7669 (HSG) (N.D. Cal.); and *Sjunde AP-Fonden v. Goldman Sachs Group, Inc.*, No. 18-cv-12084 (VSB) (S.D.N.Y.).

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA.  Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial held in 2014 in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—one of just thirteen securities class actions at the time to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).  The firm also obtained the largest damage award at the time in Delaware Chancery Court history

15

following a trial before Chancellor Leo E. Strine, Jr.  *See In re S. Peru Copper Corp. S'holder Derivative Litig.*, No. 961-CS (Del. Ch.), *aff'd Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

Finally, Kessler Topaz has already demonstrated its commitment to the prosecution of the litigation and protection of the class's interests through, among other things, its thorough pre-suit investigation into Defendants' conduct and its analysis of the merits of potential claims here.  This investigation resulted in Kessler Topaz filing the Action, the first-filed complaint.  Thus, the Court may be assured that, in the event this motion is granted, the class will receive the highest caliber of legal representation.  Accordingly, Sparinvest and SEB's selection of Lead Counsel should be approved.

## CONCLUSION

For the reasons stated herein, Sparinvest and SEB respectfully request that the Court: (1) appoint Sparinvest and SEB as Lead Plaintiff; (2) approve their selection of Kessler Topaz as Lead Counsel for the class; and (3) grant such other and further relief as the Court may deem just and proper.

DATED:  April 6, 2026

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*/s/ Gregory V. Varallo*
Gregory V. Varallo (DE Bar ID #2242)
Anthony M. Calvano (DE Bar ID #6265)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com
anthony.calvano@blbglaw.com

*Liaison Counsel for Proposed Lead Plaintiff
Sparinvest S.A. and SEB Funds AB*

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Naumon A. Amjed (DE Bar ID #4481)
Darren J. Check
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for Proposed Lead Plaintiff*
*Sparinvest S.A. and SEB Funds AB and*
*Proposed Lead Counsel for the Class*

17